**SETH P. CHAZIN (CA SBN 133777)**
**Attorney at Law**
**LAW OFFICES OF SETH P. CHAZIN**
**1164 Solano Ave**
**Albany, CA 94706**
**Telephone: (510) 507-8100**
**Facsimile: (510) 525-0087**

**Attorney for Defendant**
**GERARD JONES**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **No.  3:17-cr-00070-VC** |
| **Plaintiff,** | **DEFENDANT GERARD JONES' OPPOSITION TO GOVERNMENT'S MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143** |
| **vs.** | |
| **GERARD JONES,** | |
| **Defendant.** | **Date: April 2, 2018**<br>**Time: 1:30 P.M.**<br>**Judge: Hon. Vince Chhabria**<br>**Courtroom: Courtroom 4, 17th Floor** |

### INTRODUCTION

Defendant GERARD JONES respectfully submits this opposition to the government's Motion for Mandatory Remand Pursuant to 18 U.S.C. § 3143, filed at Docket No. 36.

### STATEMENT OF FACTS AND CASE

On February 7, 2017, Gerard Jones was charged by indictment alleging Distribution of Child Pornography on or about June 20, 2016 in violation of 18 U.S.C. § 2252(a)(2) (Count One)

1
DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

and Possession of Child Pornography through December 29, 2016 in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two).

On April 2, 2018, Mr. Jones expects to enter an open plea of guilty to both counts in the Indictment before this Court.

## ARGUMENT

## I.

## LEGAL FRAMEWORK FOR RELEASE PENDING SENTENCING

The government is correct that because it is recommending that a sentence of imprisonment be imposed, and because the charges against Mr. Jones are defined as crimes of violence under the Bail Reform Act, Mr. Jones must be detained pending sentencing unless "it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate," 18 U.S.C. § 3145(c), and clear and convincing evidence demonstrates that he is not likely to flee or pose a danger to the safety of any other person or the community. 18 U.S.C. § 3143(a)(1).

Section 3145(c) does not define the term "exceptional reasons." In the context of bail pending appeal, the Ninth Circuit has outlined a number of factors to consider in determining whether exceptional reasons exist, including: (1) whether defendant's conduct was aberrational; (2) whether the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society if allowed to remain free on bail; (3) the nature of the violent act itself; (4) the length of the prison sentence; (5) whether prison would impose unusual hardships on a defendant's physical or mental health based on his characteristics; (6) the benefit of an "uninterrupted course of treatment;" (7) whether the defendant is exceptionally unlikely to flee or constitute a danger to the community; and (8) whether the defendant was unusually cooperative with the government. *United States v. Garcia*, 340 F.3d 1013, 1019-1020 (9th Cir. 2003). However, the Court is not limited to these factors. Indeed, "Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad 'experience with the mainsprings of human conduct.'" *Garcia*, 340 F.3d at 1018-1019 (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1073 (9th Cir. 2001)).

Specifically with regard to child pornography-related offenses, several district courts have ordered release pending sentencing or appeal. For example, in *United States v. Winsor*, 890 F.Supp.2d 1257 (D.Or. 2012), the court ordered release pending appeal finding that defendant "has been using his time wisely by attending therapy and volunteering in the community. In addition, Winsor is currently 66 years old and he is a passive person who may be a target in prison. The specifics of his convictions also suggest release is appropriate; he cooperated with the government, his actual conduct was non-violent, [and] he has no criminal history…." *Id.* at 1259-1260.

Another district court in Ohio released a defendant on bond pending appeal following his conviction and sentencing for possession of child pornography. *United States v. Szymanski*, No. 3:08-cr-00417-JZ, 2009 WL 1212249 (N.D.Ohio Apr. 30, 2009). In releasing the defendant, the court noted that he had admitted his guilt immediately and cooperated fully; he posed an exceptionally low risk of danger to the community because he had no history of crime; his psychologist believed it was a one-time aberrational act precipitated by large quantities of pain medications; the defendant had been a good citizen with no criminal history, had been gainfully employed, and was now serving as care giver for his wife and mother-in-law; and, finally, the length of the expected prison sentence (60 months) was disproportionate to the crime under the circumstances. *Id.* at *2–3.

Finally, in *United States v. Reboux*, No. 5:06-cr-00451-FJS, 2007 WL 4409801 (N.D.N.Y. Dec. 14, 2007), the court released defendant on bond pending sentencing after considering the *Garcia* factors and noting that although defendant's crime of possession of child pornography was labeled as a crime of violence, his conduct was not violent, he cooperated fully and unconditionally, and he did not present a risk of flight or danger to the community as evidenced by the lengthy delay in prosecuting defendant and given his good behavior on release. "Defendant has not simply shown that, due to personal circumstances, continued detention would cause hardship. He has demonstrated that, through his faith community and work environment, he has found a support system to aid him in a course of self-improvement. [citation] In turn, his community has seen, and may continue to enjoy, the positive externalities of this personal growth. Continued detention pending sentencing would prematurely extinguish these mutual benefits." *Id.* at *3; see

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

also *United States v. Polouizzi*, 760 F.Supp.2d 284, 287-288 (E.D.N.Y. 2011) (ordering release pending self-surrender after sentencing for individual convicted of possessing and receiving child pornography: "Self-surrender under such circumstances is the normal practice in federal courts. It saves the government the expense of transportation and avoids the harshness involved in requiring a long and difficult journey from court to prison while shackled, handcuffed and chained. … [I]mmediate detention [would be] cruel, unusual and unnecessary in this case to incarcerate the defendant during the period between imposition of the sentence and designation by the Bureau of Prisons of the place of incarceration. … What may be only a nonchallengeable inconvenience to a defendant under ordinary circumstances may become cruel and unusual if there is no reason for it except unnecessary infliction of pain.").

Courts have also found exceptional reasons for release where the defendant has achieved successful and remarkable rehabilitation related to the underlying offense. See, e.g., *United States v. Kaquatosh*, 252 F.Supp.2d 775, 779-780 (E.D.Wis. 2003) (releasing defendant pending sentencing on serious assault charges where he had successfully completed a substance abuse program, received laudatory reviews from his employer who appeared in court on his behalf, asked to obtain a psychological evaluation and treatment prior to imprisonment, and provided needed income to his family based on steady employment).

## II.
## GERARD JONES IS NEITHER A DANGER
## TO THE COMMUNITY NOR A FLIGHT RISK

Here, this Court specifically found that Mr. Jones is neither a danger to the community nor a flight risk when it granted his pretrial release under the Bail Reform Act in March 2017, and the government is not arguing otherwise in its motion. Indeed, Mr. Jones has been out of custody since the inception of the case in federal court in February 2017, and for two months prior to that while the case was first pending in state court. There has not been a single allegation of any violation of Mr. Jones's conditions of pretrial release during this period. *See Memorandum of US Pretrial Services Officer Kenneth J. Gibson.*  In fact, prior to his indictment in federal court, there was a two month period while Mr. Jones was appearing in state court where he was out of custody

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

following the posting of a bail bond with <u>no</u> monitoring whatsoever; and there was no evidence or complaint of a violation of his release on that bond as well.

Mr. Jones has been attending one individual psychotherapy appointment per week since his arrest in January 2017. He has attended virtually every scheduled appointment during that time period. See Exhibit A (letter from Cynthia V. Rinker, MFT and Certified Sex Addiction Therapist (CSAT) at the San Francisco Forensic Institute (SFFI)). He has also been attending group therapy at SFFI as well as an average of <u>six</u> Sex Addicts Anonymous (SAA) meetings per week since January 2017, and holds service positions at three weekly meetings.

As his therapist Cynthia Rinker explains in her Risk Assessment, child pornography offenders typically reoffend at a very low rate, and research indicates that a higher recidivism risk is associated with the following characteristics: (1) the offender is young, (2) the offender has never been married, (3) the offender has a low level of education, (4) the offender has a prior criminal history (especially violent or sexual offense), (5) the offender has a history of conditional release failure, (6) the offender has substance use problems, and (7) the offender possesses non-internet child pornography. See Exhibit A (further noting that offenders who successfully complete treatment recidivate at a rate 50 percent less than those who participate but do not complete treatment). Applying these factors to Mr. Jones, Ms. Rinker concludes:

> In Mr. Jones's case, in terms of factor 1, he is of sufficient age for this factor to mitigate his risk. In terms of factor 2, he has maintained at least one long-term, marital relationship and continues to be in this relationship. In terms of factor 3, he has an advanced degree. This factor may separate him from typical recidivists. In terms of factor 4, Mr. Jones has no known prior criminal history. In terms of factor 5, Mr. Jones has never been on probation. This does not aggravate or mitigate risk. In terms of factor 6, Mr. Jones denies a substance abuse problem. In terms of factor 7, Mr. Jones was not found to possess non-internet child pornography. Factors above except #5 support a lower risk than the average recidivist.

> Mr. Jones was involved in compulsive, almost addictive-like behavior albeit with harmful material. He demonstrated anxious and depressive symptoms such as diminished interest or pleasure in activities that he normally found pleasure in, loss of energy, and

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

excessive work to the detriment of himself. This behavior was likely a way for him to escape into a fantasy world that he would not likely act out in the real world. He denies a sexual interest in children and has demonstrated long-term relationships with women.

Mr. Jones presents as an exceptional candidate to successfully complete treatment. In short, I believe that with proper treatment, Mr. Jones will further lower his risk of re-offense. Addressing maladaptive behavior as soon as it is discovered provides the best potential for remission. Continuing with treatment would be in his benefit.

Exhibit A, p. 2.

Also attached is an updated progress report from Ms. Rinker. See Exhibit AA.

Thus, it is clear that Mr. Jones presents neither a danger to the community nor a flight risk.

### III.

### EXCEPTIONAL REASONS SUPPORT MR. JONES' RELEASE PENDING SENTENCING.

The government is mistaken that exceptional reasons do not support Mr. Jones's release in this case. Mr. Jones has been not only totally law abiding during his pretrial release, but also an exceptional, contributing member of society during that time. Mr. Jones is currently finishing a book entitled, *Nation of Faith and Fire*, a 150,000-word, heavily researched academic book about the birth of the American social reform movement out of Christian activism in the early 19th Century. He has galley proofs in a mock-up but still needs to fill in factual information and write the footnotes.[1] The book is scheduled to be published by FSG/Macmillan after it is completed. See Exhibit T (letter from UC Graduate Theological Union board member and social justice advocate Dale Walker: "I believe this will be an important work of popular history, helping Americans to understand the origins of many of the current struggles to improve our society."); Exhibit U (letter from Reverend John L. Kirkley, Rector at St. James Episcopal Church: "Gerard gives a human

---

[1] Mr. Jones further respectfully notes that to complete the book, he needs material from the folder entitled "NFF Nov" on the Apple MacBook Air Laptop seized on December 29, 2016, based on original research that he cannot duplicate online.

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

face to the importance of bringing a spiritual commitment to the elevation of public life."); Exhibit V (letter from journalist Frank Lovece: "Especially revealing of the role of churches and religious leaders in promoting universal education, urban reform, and racial equality.").

Mr. Jones is also working on a book of short political satire stories, *The Mystery of the Changing Times*, with co-writer Will Jacobs. See Exhibit J (letter from Will Jacobs). The rough draft is currently in re-write, and Mr. Jones needs time to finish it. He also just published a novel, *Million Dollar Ideas*, released by Avalon Books last month (again with co-writer Will Jacobs), and edited a book of another writer's short stories, *Solitary Pursuits* by Joseph Filice, to be released next month. Mr. Jones has also begun co-writing a book, *Bonds of Shame*, on addiction to internet pornography, including the story of his own addiction and fall, which he believes will help other people avoid the same path. This may be the first book ever published by someone facing these charges and using his real name. If Mr. Jones is not remanded immediately, he will be able to finish his draft and turn it over to his co-writer, Randy Weled, MFT, before sentencing. Mr. Jones expects these projects to generate significant income for his wife and son, which will be especially critical once he begins to serve a prison sentence.

Mr. Jones has also been assisting other offenders to make sure they do not relapse or reoffend and is a valuable member of the SAA community. He has four SAA sponsees, all of whom affirm that he is helping keep them sober. One will be presenting his First Step at a meeting—a huge step in SAA—on April 3, 2018, and Mr. Jones is supposed to be there to support him. Mr. Jones is also a valued speaker at SAA meetings throughout the Bay Area and has been asked to speak at the national SAA convention in Oakland this Memorial Day weekend where he will tell his story to hundreds of addicts. As his sponsor, sponsees, and Ms. Rinker can attest, Mr. Jones's story is incredibly valuable to other addicts who may be on a path to breaking the law. See Exhibits W-Z and CC (Letters from SAA members attesting to Mr. Jones' outstanding role in the SAA fellowship).

The government argues that participation in a program of treatment is not an exceptional circumstance under 18 U.S.C. § 3145(c), citing two cases, one from the Eighth Circuit and one from Missouri district court. But as described above, this factor is but one in the totality of the

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

circumstances, and other courts have found exceptional reasons for release where the defendant has achieved successful and remarkable rehabilitation related to the underlying offense. See, e.g., *United States v. Kaquatosh*, 252 F.Supp.2d 775, 779-780 (E.D.Wis. 2003). Such is the case here.

Mr. Jones was also evaluated by clinical and forensic psychologist Jeremy Coles, Ph.D., who concluded that Mr. Jones is not a predator or pedophile and presents an extremely low risk of reoffending. See Exhibit B (Confidential Report of Psychological Evaluation dated November 3, 2017). More specifically, Dr. Coles noted the direct correlation between the onset of Mr. Jones's involvement with child pornography and his being prescribed and using Ritalin to ameliorate the effects of Attention Deficit Disorder and improve his attention and ability to concentrate, which had been impaired and was affecting his work output. *Id.* at p. 15. Mr. Jones has not used Ritalin since the day of his arrest, has no active prescription, and has no desire to use it again. Ultimately, Dr. Coles found that Mr. Jones's use of the pornographic contraband was both aberrant and situational in nature and not indicative of any deep underlying personality disorder or innate deviancy. *Id.* at p. 14. He also concluded that Mr. Jones is not a danger to the community, that his risk of re-offense is "very low," and that "there is little to no chance that he would not comply with the conditions of a community release plan." *Id.* at p. 15. Finally, he noted that Mr. Jones's demonstrated commitment to his treatment program, which he has engaged in for almost a year, presents a very positive prognosis. *Id.* In light of Dr. Coles' experience and expertise as an evaluator for the State of California's Sexual Violent Predator Evaluation Panel, his opinion in this area can be relied upon with confidence. Also See Exhibit BB (CV of Jeremy Coles, Ph.D.).

Mr. Jones is also very active and a valued member in his church community. The clergy at St. Gregory of Nyssa Episcopal Church, all of whom are aware of the instant case, emphatically request that he remain in the church community as long as possible. See Exhibit C (letter from Reverend Dr. Paul D. Fromberg, Rector). Mr. Jones will be helping with upcoming services on Good Friday, Holy Saturday, and Easter Sunday, and will do the same in later services if not remanded. Mr. Jones is also a key volunteer and leader at the weekly Food Pantry charity, where he volunteers from 8 a.m. to 4 p.m. every Friday, and where both of his supervisors and some of his fellow volunteers know of his charges. According to Reverend Fromberg, Mr. Jones "is

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

reliable, sensible, courteous and kindhearted. His contributions to our Food Pantry are very helpful to our work." Exhibit C.

Indeed, Mr. Jones has no prior criminal record whatsoever and is now 60 years old. He is also incredibly fortunate to have a deeply supportive wife with whom he lives and who serves as his court-appointed custodian. His wife Jenny has worked as a registered OB-GYN nurse at UCSF and San Francisco General for 37 years. She is highly invested in his remaining sober and crime-free, and Ms. Jones reports that their relationship is stronger than ever and that Mr. Jones has continued to be entirely honest with her.  She has attended virtually every court appearance with Mr. Jones and will be present in court when Mr. Jones enters his plea of guilty.

Finally, Mr. Jones is clearly a valued and respected member of his community, as evidenced by the 17 letters of support that friends, clergy, and colleagues have written on his behalf, all of whom know the nature of his charges. These letters describe a man that is known by many as a good person, one who would go out of his way to help a friend, loved one, or colleague:

- Exhibit D, Letter from Reverend John L. Kirkley, Rector at St. James Episcopal Church: "In my judgment, Gerry is absolutely committed to working a program of recovery and amending his life. He is actively searching for a Christian community to support his spiritual growth, as well actively participating in the fellowship of a 12-step program focused on sexual addiction. He is a person of good character and I do not believe him to be a danger to others."

- Exhibit E, Letter from Dale Walker, friend and member of St. John's Presbyterian Church: "I have always known Mr. Jones to be an individual of the highest integrity and personal responsibility. When he has fallen short of his own standards, I have seen him apply himself fully to working on his issues both spiritually and psychologically. From our recent conversations, I know that he is facing his past actions squarely and doing all he can to improve himself and make amends. … I have only seen him go out of his way to be of service to others through his recovery program, his work as a writer and teacher, his church and his family. I am proud to number him among my friends and believe he is a true asset to our society."

- Exhibit F, Letter from Aren Haun, friend and fellow recovery program member since 2015: "In the time I have known Gerard, I have found him to be nothing other than kind, honest, and generous. When I first met him, he was one of the first people to offer help to both me and my wife. In my experience, he has always been a patient, thoughtful, intelligent, and selfless person. … Gerard is absolutely committed to his own recovery and to helping others become free of addiction."

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

- Exhibit G, Letter from Peter Escobar, SAA sponsee since 2012: "[Gerard] has always worked a hard, dedicated program and has been a model to me in my own recovery. Now I see him bringing that same dedication to recovery and service in SAA. I see him attacking his addiction head-on, really owning his past behaviors, and working to become a better person. Over the years, Gerard has often advised me on parenting. He is clearly a devoted father who truly cares about young people. … Gerard and I have also shared our spiritual journeys. I have been with him as he has gone through a genuine spiritual shift over the past several months. I am honored to be one of the people sponsoring him at his upcoming baptism at St. Gregory's Church. He is a great asset to SAA meetings due to the honesty of his shares and his generosity in giving service. I have accompanied him to his community-service work at the San Francisco Food Pantry and know that his commitment to it is sincere. There is no question that he will go to any lengths to be a positive presence in the world."

- Exhibit H, Letter from Tim Pauly, friend and fellow recovery program member since 2011: "Gerard is someone I turn to for support and to whom I offer support. We met in an addiction recovery group: a group where high value is placed on honesty and vulnerability. During my time being friends with Gerard, I've been impressed at the degree to which he embodies these values and the concept of 'recovery.' Over time, I've experienced his growth as a person: in friendship, in his marriage, and in his support for others who are doing the same work. He's a valuable member of the recovery community and a true friend."

- Exhibit I, Letter from Tom Leugers, friend and fellow recovery program member since 2010: "I've seen Gerry's efforts to improve not only his relationship but his overall well being. He has really shown up to put in hard work on his personal development. I've been impressed with the growth I've seen and he has taught me quite a bit during that time as well. I've definitely taken things he's suggested worked for him and applied them to myself in my desire for self improvement. He consistently helps new people that attend the meetings through his experience. He's an integral piece of the group and it would be lacking without his participation."

- Exhibit J, Letter from Will Jacobs, author and owner of Avalon Books bookstore and Atomic Drop Press: "I have been a close friend and professional partner of Gerard Jones since 1978. We have written four published books together, two screenplays, a graphic novel series that ran for six years, and worked closely together on the aforementioned Atomic Drop Press. We've gotten to know each other's families, gone on camping trips together, and stayed overnight at each other's homes too many times to count. In the nearly 40 years of our friendship I've never known him to be anything but a person of integrity and decency. He's quick to own up to his mistakes and strives to be a better person. He's the most even-tempered person I've ever known. He's intelligent, funny, and the best of company."

- Exhibit K, Letter from Caroline Paul, author, colleague at the San Francisco Writers' Grotto, and former San Francisco firefighter: "I know Gerry to be a guy who always has a good word to say to people around him. He and I were part of a writing group within the

10
DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

Grotto, where we regularly hashed out our writing challenges, our personal roadblocks, and our hopes and dreams. Gerry was a good listener and a generous participant. While I am a successful writer, I shed my tears, as artists do, during setbacks, and more than once Gerry stopped me in the hall to inquire how things were going. He made me feel comfortable and accepted, and never embarrassed. I'm well aware of the charges against Gerry and I have never seen any inappropriate behavior toward children. I think of Gerry fondly and with respect to this day."

- Exhibit L, Letter from Chris Colin, author and colleague at the San Francisco Writers' Grotto: "As long as I've known [Gerry] he's been a supportive and friendly presence, gracious with newcomers and humble about whatever writing challenge he was currently facing. Over the years I heard him speak with great devotion about his son. I always appreciated how conscientiously he spoke about parenting."

- Exhibit M, Letter from Chris Cook, author and colleague at the San Francisco Writers' Grotto: "[A]s a fellow author and writer and member of the San Francisco writing community, I have long known Gerry as a person of significant integrity, social grace and generosity, and kindness …."

- Exhibit N, Letter from Elizabeth Bernstein, author and colleague at the San Francisco Writers' Grotto: "In all our time together, I have known Gerry to be a kind, generous, loyal, trustworthy and non-judgmental friend. He was always available to lend an ear when I had a problem or concern. He was genuinely interested and never too busy to try to help. … I have also had many conversations with Gerry about his son and I know how much he cherishes and takes seriously his parental responsibility. I am aware that he is before you now facing very serious charges. There are few people I would stand behind without hesitation, through any hardship in life. Gerard Jones is one of them. Today, as always, I'm proud to call Gerard Jones my friend."

- Exhibit O, Letter from Ethan Watters, author and co-founder of the San Francisco Writers' Grotto: "For several years Gerry Jones was a valued and cherished member of our community. He participated and added to group events and was a respected and sought-after teacher. We have never had a complaint from any of his students as to the appropriateness of his behavior. I know him personally as a friend and fine community member. I know him also as an excellent teacher and as a father deeply concerned with the educational difficulties of his son. His reputation as a friend and a colleague among the over 100 members of the Grotto was excellent."

- Exhibit P, Letter from James Hudnall, comics author and colleague of 30 years: "In all the time I have known Gerry, I have never seen any behavior or attitude that was the least bit salacious or strange. He's never indicated anything, through his humor or his personal interactions with myself or others, that was in any way out of the ordinary or remotely questionable. So these charges against him are very surprising in the least. I can only say that in my experience he has always been a good guy."

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

- Exhibit Q, Letter from Mark Badger, comics author, activist, friend, and colleague of 30 years: "I have watched as Gerard helped younger artists and writers succeed in the field and become part of the comics community. We've discussed the challenges of teaching as he volunteered at Dave Eggers' 826 Valencia in mentoring and workshops. As we both had young boys, parenting and Thomas the Tank Engine began to dominate our talk. Slowly the problems of negotiating public and private school, kids with challenges of their own became the main topic for many years. Reflecting on all the changes we have been through from medical conditions, parenthood to creating comics I don't think there is any topic we haven't brushed up against. I've seen Gerard's deep love for his son and family, concern for other children and certainly trust him with my own son easily with no fears at all."

- Exhibit R, Letter from Mike Barr, comics author and colleague of 30 years: "I have always enjoyed my time spent with Gerry, both on a personal and professional basis. I have been impressed by his integrity, and have enjoyed our seemingly-endless discussions on the history of comics and popular literature. These have led to another mutual interest -- campaigning for benefits for older comic book creators. Many of these early comic book creators have no pensions of any kind, so this service is not only generous, it is necessary. The creators who have finally received additional income in the form of reprint or merchandising payments are very grateful for this service."

- Exhibit S, Letter from Arielle Rosen, friend: "I find Gerry to be endlessly introspective, humble and wise, and I appreciate his goal and ability to continuously strive towards being a better human and partner."

Lastly, other factors supporting a finding of exceptional reasons to permit release pending sentencing include the fact that Mr. Jones fully cooperated and admitted guilt at the time of his arrest while providing a lengthy confession to the law enforcement investigators, that he is 60 years old with no history of prior criminal convictions or arrests, that he did not engage in any violent conduct, that he has been using his time wisely by attending therapy and volunteering in the community, that the length of the expected prison sentence is disproportionate to the crime under the circumstances, and that there is not only benefit to Mr. Jones and his family if the court were to release him pending sentencing but, as clearly shown above, there would also be significant benefit to many others in his community and the general public as a whole. See *United States v. Reboux, supra.; United States v. Winsor, supra. and United States v. Szymanski, supra.*

///

///

///

12
DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143

**CONCLUSION**

In sum, Mr. Jones has taken his arrest and prosecution very seriously and has made every effort to turn his life around and give back to his community, in ways both related and unrelated to his offense. Since his arrest, he has not only maintained a spotless record while released on bail in state court without any monitoring or restrictions, but he has done the same while under US Pretrial supervision. Moreover, he has been an extremely productive and contributing member to the literary community, his family, his recovery groups, his religious community and his community at large. These circumstances constitute the kind of "exceptional reasons" contemplated by Congress in promulgating 18 U.S.C. § 3145(c) and allowing for release pending sentencing.

**Dated: March 29, 2018**                    **Respectfully submitted,**


                                            _____/s/_____
                                            **SETH P. CHAZIN**
                                            **Attorney for Defendant GERARD JONES**

DEFENDANT GERARD JONES'S OPPOSITION TO GOVERNMENT'S
MOTION FOR MANDATORY REMAND PURSUANT TO 18 U.S.C. § 3143